# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIM. NO. 08-0142** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **BILLY RAY MORRIS** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

The defendant, **BILLY RAY MORRIS** ("Morris"), has filed a motion to dismiss the indictment on multiple grounds. [rec. doc. 27]. The government has opposed the motion. [rec. doc. 31]. For those reasons set out below, the undersigned recommends that the motion to dismiss be **denied.**

## LAW AND ANALYSIS

The defendant, **BILLY RAY MORRIS**, was indicted, in one count, for violation of 18 U.S.C. § 2250, failure to register as required by the Sex Offender Registration and Notification Act ("SORNA"). [rec. doc. 1]. The defendant has filed a motion to dismiss the indictment on four grounds: (1) that he is not required to register under SORNA; (2) that § 16913(d) of SORNA violates the non-delegation doctrine; (3) that the application of § 2250, as to him, violates the *ex-post facto* clause of the United States Constitution; and (4) that SORNA and § 2250, as applied to him, violates his due process right to fair notice. [rec. doc. 27].

The government counters by arguing that the defendant is clearly required to register under SORNA regardless of whether any particular jurisdiction has fully complied with, or implemented, SORNA's standards, that the defendant may be prosecuted under § 2250 without contravening the *ex-post facto* clause of the Constitution, that Congress did not unconstitutionally delegate its legislative power to the Attorney General and, finally, that the defendant had sufficient notice of the registration requirements of SORNA to give him fair notice, which therefore affords him due process. [rec. doc. 31].

## 1. FACTS

The indictment charges that the defendant was convicted of a felony sexual offense. Thereafter, in the words of the indictment, "reasonably near" November 1, 2007 and "continuing until on or about the 28th of February, 2008," the defendant failed to register in Louisiana as a sex offender as required by the Sex Offender Registration and Notification Act, in violation of Title 18 U.S.C. § 2250.

Apparently, the defendant was convicted of the underlying sex offense (oral copulation with a person under the age of eighteen) in Los Angeles, California in 2004, for which he was sentenced to sixteen months imprisonment. [rec. doc. 33, p. 1]. The government, in its opposition to defendant's motion to dismiss, alleges that after his release from custody, the defendant was placed on supervised release and monitored under the Global Positioning System (GPS) program. Documents submitted by the government reveal that Morris registered as a sex offender in California, his last such registration

occurring on August 31, 2007, at which time Morris resided in Long Beach, California.

However, on October 11, 2007, the government alleges that Morris stopped reporting to his parole agent and stopped charging his GPS monitor. After his arrest by the United States Marshal's Service, as a result of interviews of the defendant and the defendant's friends and family, it was determined that Morris had been living in Lake Charles, Louisiana since his grandmother's funeral in November 2007. [rec. doc. 31, p. 1-2]. Thus, Morris moved from California to Louisiana "in or reasonably near" November 1, 2007. In the defendant's memorandum in support of the motion to dismiss, he asserts that the travel from California to Louisiana "occurred on or before October 1, 2007". Based on the record before this court, the travel to Louisiana apparently occurred after October 11, 2007. The defendant apparently resided in the Western District of Louisiana from that time until his arrest in February 2008. The defendant never registered as a sex offender as required by Louisiana law and SORNA, after his move to Louisiana.

## 2. SORNA

In 1994, Congress passed, as part of the Violent Crime Control and Law Enforcement Act, the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, which required, in part, sex offenders to register with state law enforcement officials for a minimum period of 10 years after their release from prison. 42 U.S.C. § 14071(b)(6). The failure to register was made a misdemeanor offense, punishable by imprisonment for up to one year. For a second offense, an offender faced a maximum of 10 years imprisonment. 42 U.S.C. § 14072 (i).

On July 27, 2006 the Adam Walsh Child Protection and Safety Act of 2006 and SORNA became effective. The registration requirements of SORNA are set forth in 42 U.S.C. § 16913. Section 16913 (a) requires a sex offender to register in each jurisdiction where the offender resides. Section 16913 (b) requires that the offender "shall" initially register before completing his sentence, or within three days following the imposition of sentence, if the offender is sentenced to probation. If a sex offender who is required to register under the Act travels in interstate commerce and fails to register, he faces imprisonment for up to 10 years. 18 U.S.C. § 2250 (a).

For offenders who were convicted *prior* to the effective date of SORNA (as was Morris), and were therefore unable to comply with the initial registration requirements of the Act, Congress provided that the Attorney General had the authority to specify the applicability of the registration requirements as to them. 42 U.S.C. § 16913 (d). Congress further provided that the Attorney General "shall" prescribe rules for the notification of sex offenders who cannot be registered in accordance with the provisions of SORNA. Apparently, no such rules have been adopted to date.

On February 28, 2007, the Attorney General published an Interim Rule, found at 28 C.F.R. § 72.3, which provides that the registration requirements of SORNA apply to all sex offenders who had been convicted of an offense which would require registration, even if the conviction for the sex offense was prior to the enactment of SORNA.

Thus, the following chronology appears clear. The defendant was convicted of a

sex offense in Los Angeles, California prior to the effective date of SORNA. SORNA became effective July 27, 2006. The Attorney General promulgated the Interim Rule making SORNA applicable to the defendant on February 28, 2007. The defendant moved to Louisiana in approximately October 2007. The defendant continued to reside in Louisiana until February 2008. The defendant never registered in Louisiana as required by Louisiana law and SORNA.

### 3. Was the defendant required to register under SORNA?

Initially, the defendant argues that he was not required to register under SORNA because, at the time he traveled to Louisiana, the Act did not apply to him, since his conviction occurred prior to the effective date of SORNA and the Attorney General had not yet promulgated the Interim Rule which made the registration requirements retroactive. The defendant additionally argues that because Louisiana had not implemented SORNA at the time the defendant traveled to Louisiana, as required under § 16913 (e), by its own terms, SORNA did not apply to him.

As set out above, the defendant apparently traveled to Louisiana *after* the Attorney General promulgated the Interim Rule which made the registration requirements applicable to sexual offense convictions which predated the enactment of SORNA. Accordingly, the defendant was required to register under SORNA in Louisiana after his October 2007 arrival in this State.

Morris, could not comply with the initial registration requirement set forth in

§ 16913 (b) (that he register before the completion of his sentence) because he completed his sentence *before* SORNA was enacted by Congress. As this court previously explained in *United States v. Mantia*, 2007 WL 4730120, *2-3 (W.D. La. Dec. 10, 2007),

> [i]t was to provide for exactly this situation that Congress enacted sub-paragraph (d) of § 16913, which provides that the Attorney General has the authority to specify the applicability of the registration requirements to sex offenders convicted before the effective date of SORNA. A simple and straightforward reading of the statute leads to the inescapable conclusion that since Mantia could not comply with the initial registration requirement of § 16913 (b), he was under no legal obligation to register unless and until the Attorney General adopted a Rule making the registration requirement applicable to him. This the Attorney General did on February 28, 2007.

Accordingly, like Mantia, Morris was required to register under SORNA after February 28, 2007. This, he did not do.

Moreover, as this court found in *Mantia*, the requirement to register did not violate the *ex post facto* clause of the Constitution because, under the rationale of the Supreme Court in *Smith v. Doe*, 123 S.Ct. 1140 (2003), the registration requirements of SORNA are primarily regulatory and nonpunitive. *Mantia*, 2007 WL 4730120 at *3. The *ex post facto* clause does not preclude Congress from making reasonable categorical judgments that the conviction of specified crimes should entail particular regulatory consequences. Based on the high recidivism rates for sex offenders, Congress is free to legislate with respect to convicted sex offenders as a class, rather than require an individual determination of their dangerousness. *Id. citing Smith v. Doe*, at 1153-1154.

The defendant's additional arguments fare no better. Morris argues that because

Louisiana has not implemented SORNA as required by § 16913 (e), he had no obligation to register in Louisiana. The defendant's position is clearly wrong. Section 16913 (a) of SORNA mandates that "[a] sex offender *shall* register . . . in each jurisdiction where the offender resides . . . ." The statutory mandate is not dependant on Louisiana's implementation of its own criminal penalty for failure to comply with the registration requirement as set forth in § 16913 (e). As the government correctly asserts, SORNA contains distinct provisions, some applicable to jurisdictions and others applicable to convicted sex offenders. The provisions applicable to jurisdictions set standards, which a jurisdiction may, or may not, adopt, the latter option being subject to a federal funding reduction. *See* 42 U.S.C. § 16911 (10) and § 16925.

SORNA does not require that any jurisdiction adopt, or fully implement, each provision as the defendant suggests. However, under the express terms of § 16913 (a), SORNA *does* require that convicted sex offenders register. Further, courts which have considered this argument have uniformly held that the fact that a state has not met its obligations under SORNA does not obviate the defendant's obligation to register. *United States v. Torres*, 573 F.Supp.2d 925, 942-943 (W.D. Tex. Aug. 21, 2008); *United States v. Ditomasso*, 552 F.Supp.2d 233, 238-239 (D. R.I. 2008); *United States v. Gould*, 526 F.Supp.2d 538, 542 (D. Md. 2007); *United States v. Trent*, 568 F.Supp.2d 857, 864-866 (S.D. Ohio July 24, 2008). The undersigned agrees with these decisions.

**4. Does the indictment violate the *ex post facto* clause as applied to this defendant?**

The defendant argues that SORNA, and the criminal provisions for the failure to register pursuant thereto (18 U.S.C. § 2250), create penalties not known or contemplated at the time that the defendant committed his sexual offense, and that, therefore, these provisions violate the *ex post facto* clause of the Constitution. The defendant, relying on the United States Supreme Court cases of *Collins v. Youngblood,* 110 S.Ct. 2715 (1990) and *Carmell v. Texas*, 120 S.Ct. 1620 (2000), argues that this indictment makes the punishment for his crime more burdensome than that proscribed at the time of its commission. Specifically, the defendant argues that subjecting him to the enhanced penalty provided under SORNA (§ 2250) violates the *ex post facto* clause because the enhanced penalty did not exist when he committed the sexual offense for which he was convicted in 2004.

The government relies on the holding of the Supreme Court in *Smith v. Doe, supra*, and argues that the opinion in *Smith* is dispositive of the issue presented here. The government further argues that the *ex post facto* clause does not apply, because Morris is not being prosecuted for his 2004 sex offense conviction; that offense merely created his status as a sex offender. Rather, Morris is being prosecuted for his interstate travel and failure to register, both of which occurred after the effective date of SORNA and after the Attorney General promulgated the Interim Rule which made SORNA applicable to the defendant. Thus, the government argues that the acts which constitute the § 2250 violation are the travel and failure to register, and that it is these acts which § 2250 punishes, not the

defendant's prior sex offense.

The government's first argument has been previously rejected by this court. *Mantia*, 2007 WL 4730120 at *4. In *Mantia*, this court found that *Smith v. Doe* is not dispositive of the issue presented by this case. Rather, *Smith v. Doe* dealt *solely* with the constitutionality of the registration requirements of the Alaska Sex Offender Registration Act. *Id*. "While the Court noted that the Alaska Act had criminal penalties for the failure to register, the constitutionality of those criminal penalties was not before the Court; in *Smith v. Doe*, no one was being criminally prosecuted." *Id*. Thus, as in *Mantia*, the issue presented in this case is beyond the scope of the *Smith v. Doe* decision. *See Id. citing Smith* at 1152; *see also United States v. Howell*, 2008 WL 313200, *11 (N.D. Iowa Feb 1, 2008).

"To fall within the *ex post facto* prohibition, a law must be retrospective – that is, it must apply to events occurring before its enactment – and it must disadvantage the offender affected by it by altering the definition of criminal conduct or increasing the punishment for the crime." *Lynce v. Mathis*, 519 U.S. 433, 441, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997) *citing Weaver v. Graham*, 450 U.S. 24, 29, 101 S.Ct. 960, 964 (1981) and *Collins v. Youngblood*, 497 U.S. 37, 50, 110 S.Ct. 2715, 2723 (1990). Thus, the *ex post facto* clause of the Constitution prohibits Congress from criminalizing conduct after is has occurred, or from increasing the punishment for a crime after it is committed. *Collins*, 497 U.S. at 41; *Miller v. Florida*, 482 U.S. 423, 429 (1987); U.S. Const., Art. I, § 9, cl. 3.

There are no factually similar appellate court decisions deciding the issue presented to this court.[1]  However, the issue has been presented to many district courts, under facts not materially different from those in this case, which have held that the prosecution of a defendant for violation of  § 2250, when both the interstate travel and the failure to register occur *after* the effective date of SORNA and *after* the Attorney General's publication of the Interim Rule, is constitutionally permissible.  *See e.g. United States v. LeTourneau*, 534 F.Supp.2d 718 (S.D. Tex. Jan. 9, 2008); *United States v. Utesch*, 2008 WL 656066 (E.D. Tenn. March 6, 2008); *United States v. Hallowell*, 2008 WL 4093699 (D. Neb. Aug. 8, 2008); *see also United States v. Senogles,* 570 F. Supp.2d 1134, 1153-1154 (D. Minn. Aug. 4, 2008).  The government relies on this line of cases in support of its position.

The undersigned has read, and has carefully considered, the decisions relied on by the defendant.[2]  Those cases are factually different than the situation presented here.  In

---

[1]There is an appellate court decision addressing an *ex post facto* argument in a factually dissimilar case, where the defendant's travel occurred *after* SORNA's enactment, but before the Attorney General's promulgation of the Interim Rule.  *United States v. May*, 535 F.3d 912 (8th Cir. 2008).  However, as is discussed below, that case, though factually distinct, supports this court's reasoning.

[2]*United States v. Muzio*, 2007 WL 2159462,*6-7 (E.D. Mo. July 26, 2007), *declined to follow, U.S. v. May*, 535 F.3d 912 (8th Cir. 2008); *United States v. Stinson*, 507 F.Supp.2d 560, 568-69 (S.D. W.Va. Sept. 7, 2007); *United States v.  Sallee*, 2007 WL 3283739 (W.D. Okla. Aug. 13, 2007); *United States v. Marvin L. Smith*, 528 F.Supp.2d 615 (S.D. W.Va. June 13, 2007); *United States v. Bobby Smith*, 481 F.Supp.2d 846 (E.D. Mich March 8, 2007); *United States v. Kapp*, 487 F.Supp.2d 536 (M.D. Pa. May 16, 2007); *United States v. Barnes*, 2007 WL 2119895 (S.D. N.Y. July 23, 2007).

each of those cases, the defendant's travel occurred prior to SORNA's effective date measured either from the date of its enactment (July 27, 2006) or the date of publication of the Interim Rule (February 28, 2007).[3] In Morris' case, the interstate travel occurred after *both* the enactment of SORNA and the publication of the Interim Rule. For this reason, the undersigned finds the line of cases cited by the government which have decided the issue of whether or not the *ex post facto* clause of the United States Constitution applies to defendants situated as is Morris here, are more persuasive than those cited by the defendant. Accordingly, based on the reasoning of these cases, the undersigned concludes that the prosecution of a defendant, like Morris here, does not violate the *ex post facto* clause of the United States Constitution and is therefore not barred.

Indeed, the difference in result between those who traveled prior to SORNA's effective date and those who traveled thereafter was recognized in one of the cases relied upon by the defendant, *United States v. Muzio*, 2007 WL 2159462, *5 (E.D.Mo. July 26, 2007), *declined to follow, U.S. v. May*, 535 F.3d 912 (8th Cir. 2008), wherein Judge Perry agreed with the government that there is "no constitutional problem" with prosecuting persons who traveled and failed to register after the promulgation of the Attorney General's Interim Rule, and that the Act "is only unconstitutional when applied to those previously–convicted persons who traveled before the Attorney General's rule."

_____

[3]There is a split among district courts about whether applying SORNA to travel prior to July 27, 2006 or February 28, 2007 implicates the *ex post facto* clause. This case does not implicate this split of authority because Morris traveled *after* February 28, 2007.

The factual situation in this case is precisely the same as that in *United States v. LeTourneau*, *supra*. In *LeTourneau*, the defendant was convicted of a sex offense before the enactment of SORNA, traveled in interstate commerce after the enactment of SORNA and after the Attorney General issued the Interim Rule, and was then indicted. *Id*. at 719. In *LeTourneau*, Judge Hanen concluded, as do I, that the criminal conduct proscribed in § 2250 is "traveling in interstate commerce and subsequently failing to register." *Id*. at 721; *see also Mantia*, 2007 WL 4730120 at *5 (finding that "the criminal act proscribed in § 2250 is 'traveling and failing to register."); *Howell*, 2008 WL 313200, *11 (same). "SORNA does not punish a defendant for the sexual offense committed prior to the enactment of SORNA, but rather traveling in interstate commerce and failing to register after SORNA became effective." *Id*. at 722. Several courts recognize this. *Mantia, supra*.; *United States v. Cardenas*, 2007 WL 4245913, *10 (S.D.Fla. Nov. 29, 2007) ("SORNA does not criminalize the fact that the Defendant committed a sex offense prior to the statute's enactment. To the contrary, 18 U.S.C. § 2250 (a) criminalizes Defendant's conduct after the enactment of SORNA . . . when the Defendant became subject to federal jurisdiction, by traveling in interstate commerce and then failing to register as required by SORNA."); *United States v. Stinson*, 507 F.Supp.2d 560, 568 (S.D. W.V. Sept. 7, 2007) ("the criminal act is traveling and failing to register"). *See also Senogles,* 570 F.Supp.2d at 1155 (noting that "SORNA has not criminalized a sex offense that took place prior to its enactment, but rather, has imposed registration requirements on the Defendant . . . and the

Defendant is charged with violating those requirements after both SORNA was enacted, and the Interim Order was promulgated.").  Section 2250 can therefore be constitutionally applied here because both the travel and the failure to register were covered by § 2250 when Morris traveled to Louisiana and failed to register.

Indeed, the sole appellate court decision reaching an *ex post facto* claim, albeit under different facts from those presented in this case, agreed that the prior sex offense conviction is not a "triggering event" for a prosecution.  *May*, *supra*.  There the court said, "[s]ection 2250 punishes an individual for traveling in interstate commerce and failing to register.  The statute does not punish an individual for previously being convicted of a sex crime." *Id*.

In Morris' case, Congress did not criminalize conduct after the conduct occurred, nor did Congress increase the punishment for a crime after the crime was committed. Morris  traveled from California to Louisiana and failed to register as a sex offender, as required by SORNA, after the registration requirement applied to him. Therefore, prosecuting Morris under § 2250 is not retrospective and does not violate the *ex post facto* clause.  For these reasons, the undersigned concludes that, as to this defendant, § 2250 does not implicate or violate the *ex post facto* clause of the United States Constitution.

## 5. Does SORNA violate the non-delegation doctrine and separation of powers principle?

The defendant also argues that Congress delegated to the Attorney General, an arm

of the executive branch, the right to determine who should be subject to SORNA and who should not, thus, allowing a "police agency" to decide to whom the law applies. This was done, according to the defendant, without clear guidance from Congress as to the intent of Congress which therefore violates the non-delegation doctrine and separation of powers principle. The defendant cites no authority for the proposition that this delegation to the Attorney General is, in and of itself, unconstitutional.

The government responds by pointing out that Congress has often delegated to the executive departments authority to draft rules implementing Congressional Acts, and the "policy judgments" contained therein. [rec. doc. 31, p. 10].

The "non-delegation doctrine" is derived from Article I, Section 1 of the Constitution which provides, in pertinent part that, "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." U.S. Const. art. I, § 1. "The non-delegation doctrine is rooted in the principle of separation of powers that underlies our tripartite system of Government." *Touby v. United States*, 500 U.S. 160, 165 (1991) *quoting Mistretta v. United States*, 488 U.S. 361, 371 (1989).


Under the non-delegation doctrine, "Congress may not constitutionally delegate its legislative power to another branch of Government." *Id*. However, the non-delegation doctrine does not prohibit Congress from obtaining assistance from other branches of the Government. *Mistretta*, 488 U.S. at 372. "In determining what [Congress] may do when seeking assistance from another branch, the extent and character of that assistance must be

fixed according to common sense and the inherent necessities of the government coordination." *Id.* quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928). "So long as Congress 'shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is to conform, such legislative action is not a forbidden delegation of legislative power.'" *Id.* As such, the delegation of authority to another branch of government is proper provided that Congress clearly delineates the general policy, the public agency to which the authority has been given, and the limits of that authority. *Id.* at 372-373. "[A]bsent an ability to delegate power under broad general directives . . . . "Congress simply cannot do its job." *Id.* at 372.

The government argues correctly that in over eighty years, the United States Supreme Court has only twice invalidated a statute under the non-delegation doctrine; both cases were decided in 1935 and invalidated portions of the National Industrial Recovery Act. *Panama Refining Co. v.. Ryan*, 293 U.S. 388 (1935) and *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935). *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 474 (2001). Since then, the Supreme Court has applied broad standards to find the requisite "intelligible principle" and hold that the challenged statutes do not violate non-delegation doctrine. *Whitman*, 531 U.S. at 474-475 *citing American Power & Light Co. v. S.E.C.*, 329 U.S. 90, 104, 67 S.Ct. 133, 91 L.Ed. 103 (1946) (giving the SEC authority to modify the structure of holding company systems so as to ensure that they are not "unduly or unnecessarily complicate[d]" and do not "unfairly or inequitably distribute voting power

among security holders."), *Yakus v. United States*, 321 U.S. 414, 420, 423-426, 64 S.Ct. 660, 88 L.Ed. 834 (1944) (approving the wartime conferral of power to fix the prices of commodities at a level that "will be generally fair and equitable and will effectuate the [in some respects conflicting] purposes of the [Emergency Price Control] Act."), *National Broadcasting Co. v. United States*, 319 U.S. 190, 225-226, 63 S.Ct. 997, 87 L.Ed. 1344 (1943) (finding an "intelligible principle" in a statute authorizing the FCC to regulate airwaves "as public interest, convenience, or necessity" require), and *New York Central Securities Corp. v. United States*, 287 U.S. 12, 24-25, 53 S.Ct. 45, 77 L.Ed. 138 (1932) (finding an "intelligible principle" in a statute authorizing the ICC to approve railroad consolidations in the "public interest"); *Mistretta*, 488 U.S. at 373 *citing American Power & Light Co.,Yakus* and *National Broadcasting Co., supra., FPC v. Hope Natural Gas Co.*, 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1944) (upholding delegation to the Federal Power Commission to determine just and reasonable rates) and *Lichter v. United States*, 334 U.S. 742, 785-786 (1948) (upholding delegation of authority to determine excessive profits).

In *Mistretta,* the Court concluded that Congress had not violated the non-delegation doctrine by delegating to the United States Sentencing Commission the authority to determine the appropriate sentence, within the statutorily established range, for federal criminal offenses. *Mistretta, supra*.

In short, the Court has "almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or

applying the law."*Whitman,* 531 U.S. at 474-475 *quoting Mistretta*, 488 U.S. at 416 (SCALIA, J., dissenting), and *Id*. at 373 (majority opinion).

It is beyond dispute that in enacting SORNA, it was Congress's desire to create a comprehensive and uniform registration system among the states to ensure offenders could not evade registration requirements by simply moving from one state to another. Congress clearly set forth its general policy and purpose in 42 U.S.C. § 16901, namely to establish a comprehensive national registry of sex offenders for the protection of the public. There is no indication in this general purpose that Congress intended that SORNA reach only those convicted after its enactment. To the contrary, the broad language of the statute conveys the opposite intention. This conclusion is bolstered by Congress' broad definition of "sex offender", which includes no temporal restrictions on those convicted prior to SORNA's enactment, which evinces Congress' intent to apply SORNA to the broadest possible extent.

Furthermore, the Congressional Record leading up to the passage of the Act is instructive on Congress' intent to apply SORNA to all sex offenders, including those whose convictions predate its enactment. In explaining the need for stricter and more uniform registration requirements to his colleagues during floor debate, Senator Hatch, co-sponsor of the bill, noted there were 100,000 to 150,000 missing and non-compliant sex offenders in the United States, and stated that under SORNA Congress was going to "get tough" on

those persons and accordingly, that number was going to decrease.[4] 152 Cong. Rec.

S8012, 8013 (daily ed. July 20, 2006) (statement of Sen. Hatch).

Similar statements were also made by members of the House of Representatives.

For example, on July 25, 2006, while speaking on the House floor regarding the legislation,

House Judiciary Committee Chairman Sensenbrenner, a co-sponsor of the bill, noted that

under SORNA these same unregistered and missing sex offenders would be targeted with

criminal penalties.[5] 152 Cong. Rec. H5705, 5722 (daily ed. July 25, 2006) (statement of

Rep. Sensenbrenner).

---

[4]Senator Hatch stated:

> Laws regarding registration for sex offenders have not been consistent from State to State [sic] now all States will lock arms and present a unified front in the battle to protect children. Web sites that have been weak in the past, due to weak laws and haphazard updating and based on inaccurate information, will now be accurate, updated and useful for finding sex offenders.

> There are more than a half-million registered sex offenders in the United States. Those are the ones we know. Undoubtedly there are more. That number is going to go up. Over 100,000 of those sex offenders are registered but missing. That number is going to go down. We are going to get tough on these people. Some estimate it is as high as 150,000 sex offenders who are not complying. That is killing our children.

[5]Representative Sensenbrenner stated:

> There are over a half million sex offenders in the United States and up to 100,000 offenders are unregistered and their locations unknown to the public and law enforcement. [This bill] contains strict national offender registration and data sharing requirements to ensure that law enforcement agencies and America's communities know where sex offenders live and work.
> By requiring national registration obligations, regular updates, frequent in-person verification, and providing tough and targeted criminal penalties, we intend to make one thing clear to sex offenders across the county-you better register, and you better keep the information, current, or you are going to jail.

It would be illogical for members of Congress to express the concern that thousands of sex offenders who were required to register under state law were evading those registration requirements and then exempt those same offenders from SORNA. Moreover, considering that upwards of 500,000 people were registered as sex offenders on state registries prior to SORNA's passage, it is unlikely that Congress sought to exclude all these persons from the special requirements and penalties imposed by SORNA, unless and until the Attorney General determined otherwise.

Moreover, the authority granted to the Attorney General in 42 U.S.C. § 16913 (d) is not unlimited. To the contrary, the delegation is circumscribed to a prescribed set of circumstances concerning the retroactive applicability of SORNA's registration requirements to the narrowly defined class of persons who are required to register under SORNA, but were unable to register under the language of subsection (b) of the statute. As such, the delegation was a "gap-filling" measure, which is not so broad as to be violative of the non-delegation doctrine.

Rather, Congress' delegation of authority to the Attorney General is not unlike the myriad of situations upheld by the United States Supreme Court where Congress has enacted legislation and a federal agency implements rules and regulations implementing the statute. *See Whitman* (and cases cited therein) and *Mistretta* (and cases cited therein), *supra.*

In *Touby*, which is relied upon by the government, the Court unanimously held that

-19-

allowing the Attorney General to promulgate temporary regulations, with no judicial

review, adding "designer drugs" to the "schedules" of controlled substances for which

defendants can be prosecuted for possessing, distributing, manufacturing, etc., was

Constitutionally permissible. *Touby*, 111 S.Ct. at 1757.

Thus, *Touby* rejected the argument made by the defendant here, that is, that

Congress does not have the authority to delegate to a "police agency" the right to

determine (within guidelines) whether certain acts of a person are covered by the criminal

law. Accordingly, it is clear that Congress is free to delegate to the Attorney General the

rule making authority which the defendant challenges here, so long as it provides sufficient

guidance to the Attorney General.

The question left unanswered in *Touby,* and specifically reserved therein, is the

degree to which Congress must provide the required guidance. The Court in *Touby*

recognized that prior cases of the Court were "unclear" whether or not regulations which

pose a "heightened risk to individual liberty" requires more specific guidance from

Congress than those which do not. *Id*. at 1756. In *Touby*, the Court found the regulation at

issue there "passes muster even if greater Congressional specificity is required in the

criminal context." *Id.*

The Fifth Circuit has not addressed whether or not § 16913(d) is a constitutionally

permissible delegation to the Attorney General. Indeed, the parties have cited no case from

any Circuit which has decided the issue. Similarly, the Fifth Circuit has not decided the

question left unanswered in *Touby*, to wit, whether Congress is required to give more

specific guidance to the executive department in crafting regulations in the criminal context.

All of the district court cases which the undersigned has found have held that the delegation made by § 16913 (d) is Constitutionally permissible.[6] The undersigned has been able to locate only two cases which express concern that § 16913 (d) may represent a non-delegation violation, and those two cases were ultimately decided on different grounds.[7] None of the cases which have discussed and/or decided the issue have mentioned the issue left unresolved in *Touby*, that is, whether § 16913 (d), which has obvious criminal implications, requires more specific guidance be given by Congress than would be the case for regulations promulgated in a non-criminal context. Similarly, none of the cases hold that § 16913 (d) is sufficiently specific so as to "pass muster" even if more specificity is required for regulations promulgated in the criminal context.

It is clear that the language found in 21 U.S.C. § 811 (h) (the provision at issue in *Touby*) is much more specific and detailed than is the language found in § 16913 (d). Specific guidance and directions is given in § 811 (h) and no such specificity is found in

---

[6]*See Hallowell*, 2008 WL 4093699, *6 *citing U.S. v. Hacker*, 2008 WL 312689, *3 (D. Neb. Feb 1, 2008), *Utesch,* 2008 WL 656066, at *10, *Howell,* 2008 WL 313200, at *8, *United States v. Samuels*, 543 F.Supp.2d 669, 677-678 (E.D. Ky. Jan 17, 2008), *LeTourneau*, 534 F.Supp.2d at 724-725, *U.S. v. Dixon*, 2007 WL 4553720, *5-6 (N.D.Ind. Dec. 18, 2007), *Gould*, 526 F.Supp.2d at 545-546, *Cardenas*, 2007 WL 4245913, at *10, *U.S. v. Pitts*, 2007 WL 3353423, *7-8 (M.D.La. Nov. 7, 2007), *U.S. v. Gill*, 520 F.Supp.2d 1341, 1349 (D.Utah 2007), *U.S. v. Ambert*, 2007 WL 2949476, *7 (N.D.Fla. Oct. 10, 2007), *U.S. v. Lovejoy*, 516 F.Supp.2d 1032, 1035 (D.N.D.2007), *U.S. v. Kelton*, 2007 WL 2572204, *1 (M.D.Fla. Sept. 5, 2007), *U.S. v. Mason*, 510 F.Supp.2d 923, 927-28 (M.D. Fla. May 22, 2007), *U.S. v. Hinen*, 487 F.Supp.2d 747, 753 (W.D. Va. May 12, 2007) and *United States v. Madera*, 474 F.Supp.2d 1257, 1261 (M.D. Fla. 2007), *reversed on other grounds*, 528 F.3d 852 (11th Cir. 2008); *Zuniga*, 2008 WL 2184118 at *13; *Torres*, 573 F.Supp.2d at 948; *U.S. v. Pietrantonio*, 2008 WL 4205546, *12 (D. Minn. Sept. 12, 2008); *Senogles*, 570 F.Supp.2d at 1150-1151; *Trent*, 568 F.Supp.2d at 869-870.

[7] *U.S. v. Aldrich*, 2008 WL 427483, at *6 fn. 5 (D.Neb. Feb. 14, 2008); *U.S. v. Kapp*, 487 F.Supp.2d 536, 543 fn. 10 (M.D. Pa. 2007).

§ 16913 (d).

Both sections have at their core a "guiding principle", but § 811(h) provides specific guidance to the rule maker and § 16913(d) does not. Accordingly, if such "specific guidance" is required when the executive engages in rule making in the criminal context, I would recommend that this indictment be dismissed on the ground that SORNA does not provide sufficient "specific guidance" so as to allow this delegation of rule making authority to the Attorney General.

However, as the Supreme Court has recognized, it is not clear that such "specific guidance" is necessary. The Fifth Circuit has apparently not spoken on this issue. In the absence of a clear holding that more than a "guiding principle" is required, the undersigned is compelled to recommend that dismissal of the indictment on non-delegation grounds be denied, since there is a clear "guiding principle" enunciated by Congress in SORNA, and that nothing more is clearly required by law, at least now.

## 6. Does SORNA violate the due process notice requirement?

Finally, Morris argues that he did not receive "fair notice" of SORNA, and therefore his prosecution violates the due process clause. This court has previously rejected this same argument in *Mantia*, 2007 WL 4730120 at *6. Morris, like Mantia, clearly had actual notice of his obligation to register as a sex offender in California, as evidenced by the documents submitted by the government, which were reviewed, signed and initialed by the

defendant on August 31, 2007 when registering in California.[8]    Additionally, Morris, like Mantia, had sufficient legal notice of his obligation to register under the Jacob Wetterling Act since the passage of that Act predated his sex offense conviction. Accordingly, Morris, like Mantia, is charged with knowledge of his obligation to register under the Wetterling Act, upon his move from California to Louisiana. *Id.* at *6. The defendant cites no authority for the proposition that the increase in penalty made by § 2250 required more or additional "notice" than the defendant is charged with having under the Wetterling Act; the undersigned is aware of no such authority on facts substantially similar those presented in this case.[9] To the contrary, the jurisdictions which have considered the same or similar arguments have overwhelmingly rejected the argument. *See Mantia*, *supra*.; *LeTourneau*, 534 F.Supp.2d at 723-724 (and cases cited therein) (rejecting due process and constitutional notice arguments, finding that a sex offender's awareness of his duty under state law qualifies as constitutionally effective notice under SORNA); *Hinen*, 487 F.Supp.2d at 754 (notice under the Wetterling Act is sufficient notice under SORNA);

---

[8]By signing and initialing these documents, Morris acknowledged that he read and understood, among other requirements, his duty to update his registration if he moved outside of California to another state.

[9]As in *Mantia*, the undersigned comes to this conclusion even though the Attorney General has apparently failed to promulgate rules for the notification of persons like Morris who could not initially register in accordance with SORNA. 42 U.S.C. § 16917 (b).

The case cited by the defendant found it "unnecessary to address the constitutional questions raised by the defendant", instead deciding the case on statutory grounds, to wit, that the defendant was not required to register under SORNA and hence, SORNA did not apply to the defendant. *United States v. Marvin L. Smith*, 528 F.Supp.2d 615, 619-620 (S.D. W.Va. 2007). Moreover, that case, and another discovered by the undersigned finding constitutionally inadequate notice, involve travel *prior* to the Attorney General's promulgation of the Interim Rule. *Smith,* 528 F.Supp.2d at 616; *United States v. Barnes*, 2007 WL 2119895, *2-3 (S.D. N.Y. July 23, 2007) (the defendant was arrested on the day the Interim Rule was promulgated). That is not the case herein.

*Torres*, 573 F.Supp.2d at 943-945; *Trent*, 568 F.Supp.2d at 866-869; *Samuels*, 543

F.Supp.2d at 673-674.

In sum, because the defendant is charged with notice of his obligation to register as a

sex offender under the Wetterling Act, that notice is sufficient for SORNA. Accordingly,

the undersigned finds no due process violation in this case.

## CONCLUSION

For the above reasons, I recommend that the defendant's Motion to Dismiss the

indictment charging the defendant, **BILLY RAY MORRIS**, with violation of 18 U.S.C. §

2250 be **DENIED**.[10]

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved

by this recommendation have ten (10) business days from service of this report and

recommendation to file specific, written objections with the Clerk of Court. A party may

respond to another party's objections within ten (10) days after being served with a copy of

any objections or response to the District Judge at the time of filing. objections or response

to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the**

**proposed legal conclusions reflected in this Report and Recommendation within ten**

**(10) days following the date of its service, or within the time frame authorized by**

---

[10]Three cases have been dismissed on the ground that the SORNA registration requirement violated the Commerce Clause. No Commerce Clause challenge was made here. *See United States v. Guzman*, __ F.Supp.2d__, 2008 WL 4601446 (N.D.N.Y. 10/17/2008); *United States v. Hall*, __ F.Supp.2d __, 2008 WL 4307196 (N.D.N.Y. 9/23/2008); and *United States v. Waybright*, 561 F.Supp.2d 1154 (D. Mont. 2008).

**Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

November 14, 2008, Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE